111 T.C. No. 12


UNITED STATES TAX COURT


ROBERT C. AND NANCY L. ARNOLD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16855-97.                    Filed September 28, 1998.


In December 1989, following P's retirement, P began receiving annual distributions from his individual retirement account (IRA). At that time, P was 55 years old. The distributions were intended to constitute a series of substantially equal periodic payments within the purview of sec. 72(t)(2)(A)(iv), I.R.C., so as to avoid P's having to pay the 10-percent tax pursuant to sec. 72(t)(1), I.R.C. In November 1993, after five distributions of $44,000 each had been made, and when P attained age 59-1/2, P received $6,776 from his IRA. In the notice of deficiency, R determined that the November 1993 distribution impermissibly modified the series of substantially equal periodic payments within the 5-year period beginning on the date of the first distribution, and therefore the 10-percent recapture tax under sec. 72(t)(4), I.R.C., should be imposed on all distributions P received prior to attaining age 59-1/2. P contends that the series of substantially equal periodic payments

was completed with the fifth distribution in January 1993, or in the alternative, that the November 1993 distribution represented a cost-of-living adjustment. <u>Held</u>: P modified the series of substantially equal periodic payments by receiving the $6,776 from his IRA in November 1993 prior to the close of the 5-year period beginning on the date of the first distribution in December 1989, and is therefore subject to the 10-percent recapture tax on all distributions received prior to attaining age 59-1/2, as provided in sec. 72(t)(4), I.R.C. <u>Held</u>, <u>further</u>: P failed to prove that the November 1993 distribution constituted a permissible cost-of-living adjustment.

Robert C. and Nancy L. Arnold, pro sese.

<u>Michael F. O'Donnell</u> and <u>George W. Bezold</u>, for respondent.

JACOBS, <u>Judge</u>: Respondent determined a $21,221 deficiency in petitioners' Federal income tax for 1993. The deficiency arises due to the imposition of the 10-percent recapture tax under section 72(t)(4), which was triggered by a November 1993 distribution to Robert C. Arnold (hereinafter petitioner) from his individual retirement account. The sole issue for decision is whether the November 1993 distribution impermissibly modified a series of substantially equal periodic payments.

All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated in our findings by this reference.

## FINDINGS OF FACT

At the time petitioners filed their petition, they resided in Delafield, Wisconsin.

### Background

From approximately 1956 until 1987, petitioner was a 50-percent shareholder and vice president of ARCO Industries (ARCO), a Wisconsin corporation that manufactured chemicals for the swimming pool industry. Carl Ulrich, who served as president of ARCO, owned the remaining 50-percent interest in ARCO.

In 1987, petitioner and Mr. Ulrich sold their interests in ARCO to Sowhite Chemical Corp. (Sowhite Chemical), another Wisconsin corporation in the same business as ARCO, and petitioner then retired. Sowhite Chemical agreed to pay the purchase price for petitioner's and Mr. Ulrich's interests in ARCO through monthly installments over an 11-year period. The amount of petitioner's monthly installment was approximately $7,488. In October 1993, Sowhite Chemical filed for bankruptcy protection and stopped making payments to petitioner.

### IRA Distributions

When petitioner sold ARCO, he rolled his qualified pension plan into an individual retirement account (IRA). In 1989,

petitioner retained EMJAY Corp. (EMJAY), an actuary, to calculate the needed series of substantially equal periodic payments from his IRA (pursuant to section 72(t)(2)(A)(iv)) to avoid the imposition of the 10-percent tax on premature distributions under section 72(t)(1). In a December 5, 1989, letter, an executive vice president of EMJAY advised petitioner of the different calculation methods petitioner could employ.[1] Petitioner elected the calculation method that allowed him to receive annual distributions of approximately $44,000.

In December 1989 when petitioner was 55 years old,[2] he began receiving annual distributions from his IRA. The distributions from petitioner's IRA were as follows:

| | |
|---|---|
| December 1989 | $44,000 |
| January 1990 | 44,000 |
| January 1991 | 44,000 |
| January 1992 | 44,000 |
| January 1993 | 44,000 |
| November 1993 | 6,776 |

Petitioner received the $6,776 distribution in November 1993 to compensate for the lack of payment by Sowhite Chemical after it filed for bankruptcy. In November 1993, petitioner was over the age of 59-1/2.

---

[1] The three permissible methods for calculating the series of substantially equal periodic payments under sec. 72(t)(2)(A)(iv) are provided in Notice 89-25, Q&A-12, 1989-1 C.B. 662, 666. The parties agree that the method selected by petitioner satisfies the requirements of Notice 89-25.

[2] Petitioner was born on Mar. 3, 1934.

Notice of Deficiency

In the notice of deficiency, respondent determined that the November 1993 distribution to petitioner was an impermissible modification of a series of substantially equal periodic payments. As a result, respondent determined that the 10-percent recapture tax under section 72(t)(4) should be imposed on all distributions made prior to the date petitioner attained age 59-1/2.

OPINION

The sole issue for decision is whether the November 1993 distribution from petitioner's IRA impermissibly modified a series of substantially equal periodic payments so as to trigger the imposition of the 10-percent recapture tax under section 72(t)(4).

Generally, amounts distributed from an IRA are includable in gross income as provided in section 72. Sec. 408(d)(1). Additionally, a 10-percent tax is imposed under section 72(t)(1) on any distribution that fails to satisfy one of the exceptions for premature distributions as provided in section 72(t)(2). Section 72(t)(2) states in pertinent part:

> (2) Subsection not to apply to certain distributions. --Except as provided in paragraphs (3) and (4), paragraph (1) shall not apply to any of the following distributions:
>
>     (A) In general.--Distributions which are--
>
>   *     *     *     *     *     *     *
>
>         (iv) part of a series of substantially equal periodic payments (not less frequently than

annually) made for the life (or life expectancy) of the employee or the joint lives (or joint life expectancies) of such employee and his designated beneficiary * * *

Section 72(t)(4)[3] dictates, however, that if the series of substantially equal periodic payments (which otherwise is excepted from the 10-percent tax) is subsequently modified (other than by reason of death or disability) within a 5-year period beginning on the date of the first distribution, then the 10-percent tax under

---

[3]     Sec. 72(t)(4) states in part:

(4)   Change in substantially equal payments.--

(A)   In general.--If--

(i)  paragraph (1) does not apply to a distribution by reason of paragraph (2)(A)(iv), and

(ii) the series of payments under such paragraph are subsequently modified (other than by reason of death or disability)--

(I)  before the close of the 5-year period beginning with the date of the first payment and after the employee attains age 59-1/2, or

(II) before the employee attains age 59-1/2,

the taxpayer's tax for the 1st taxable year in which such modification occurs shall be increased by an amount, determined under regulations, equal to the tax which (but for paragraph (2)(A)(iv)) would have been imposed, plus interest for the deferral period.

section 72(t)(1) will be imposed retroactively on prior distributions made before the taxpayer attains age 59-1/2, plus interest. This retroactive application of the 10-percent tax under section 72(t)(4) is known generally as a recapture tax. See infra.

Petitioners contend that the November 1993 distribution of $6,776 did not impermissibly modify a series of substantially equal periodic payments. Petitioners make two principal arguments in support of this claim.

First, petitioners contend that the November 1993 distribution occurred after the series of substantially equal periodic payments was completed in January 1993, and thus no modification occurred. Respondent asserts that petitioners' contention contradicts the plain language of section 72(t)(4) which requires no modifications within a 5-year period. Respondent notes that in this case the 5-year period beginning with the date of the first distribution ran from 1989 through 1994. Thus, respondent argues, the November 1993 distribution was premature and hence impermissibly modified the series of substantially equal periodic payments.

Respondent's position is supported by the legislative history of section 72(t). The conference report accompanying the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, supports the proposition that the period described in section 72(t)(4)(A)(ii) must be completed before further distributions can be received to

avoid imposition of the 10-percent recapture tax under section 72(t)(4):

> In addition, the recapture tax will apply if an individual does not receive payments under a method that qualifies for the exception for at least 5 years, even if the method of distribution is modified after the individual attains age 59-1/2. Thus, for example, if an individual begins receiving payments in substantially equal installments at age 56, and alters the distribution method to a form that does not qualify for the exception prior to attainment of age 61, the additional tax will be imposed on amounts distributed prior to age 59-1/2 as if the exception had not applied. The additional tax will not be imposed on amounts distributed after attainment of age 59-1/2. This 5-year minimum payout rule is waived upon the death or disability of the employee.

H. Conf. Rept. 99-841, at II-457 (1986), 1986-3 C.B. (Vol. 4) 1, 457. It is evident that the 5-year period in section 72(t)(4) closes at the end of 5 years from the date of the first distribution; it does not end on the date of the fifth annual distribution pursuant to a series of substantially equal periodic annual payments.

In the case herein, petitioner received the fifth distribution from his IRA in January 1993, slightly more than 3 years from the date of the first distribution. Under section 72(t)(4), petitioner was required to wait until sometime in December 1994 before he could receive additional distributions that would avoid modifying the prior series of substantially equal periodic payments. He did not meet the required waiting period. Instead, petitioner received his distribution in November 1993, prior to the close of the 5-year period as provided in section 72(t)(4).

Next, petitioners argue that the November 1993 distribution was part of a cost-of-living adjustment which respondent concedes would be a permissible modification to the series of substantially equal periodic payments during the applicable 5-year period. See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 717 (J. Comm. Print 1987). In this regard, petitioners note that the $6,776 distribution, spread over the latter 4 years of distributions, was only a 3.65-percent increase over the prior $44,000 distributions and "was well within the limits of a reasonable cost of living adjustment (CLA), and thus not a modification."

Respondent claims, and we agree, that petitioners have failed to prove that the purpose of the November 1993 distribution was to serve as a cost-of-living adjustment. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners did not put forth any evidence of the appropriate cost-of-living adjustment for the relevant time period, nor did they explain how they arrived at the figure calculated or why the adjustment was made in the form of a lump-sum payment in November 1993 (rather than allocated over each of the years).

Petitioner testified that the November 1993 distribution was received after Sowhite Chemical filed for bankruptcy protection in October 1993 and ceased making its monthly installment payments to him. Thus, it is evident that petitioner received the distribution

as a result of a financial hardship when his monthly cash flow was suddenly reduced. However, no exception exists under section 72(t) for financial hardship. See Duffy v. Commissioner, T.C. Memo. 1996-556; Pulliam v. Commissioner, T.C. Memo. 1996-354.

The legislative purpose underlying the section 72(t) tax is that "premature distributions from IRA's frustrate the intention of saving for retirement, and section 72(t) discourages this from happening." Dwyer v. Commissioner, 106 T.C. 337, 340 (1996); see also S. Rept. 93-383, at 134 (1973), 1974-3 C.B. (Supp.) 80, 213. In order to avoid the section 72(t) tax, petitioners must show that the November 1993 distribution falls within one of the exceptions provided under section 72(t)(2)(A). They have not done so. Consequently, we hold that the November 1993 distribution impermissibly modified a series of substantially equal periodic payments. Thus, the 10-percent recapture tax under section 72(t)(4) is applicable to all distributions petitioner received prior to the date he attained 59-1/2.

To reflect the foregoing,

Decision will be entered for respondent.