T.C. Summary Opinion 2004-135


UNITED STATES TAX COURT


CHARLOTTE MARIE SCOTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12045-03S.          Filed September 30, 2004.


Charlotte Marie Scott, pro se.

<u>Charlotte Mitchell</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a deficiency in petitioner's Federal income tax of $1,000.11 for the taxable year 2000.

The issue for decision is whether petitioner is liable for the 10-percent additional tax on an early distribution pursuant to section 72(t).

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Hillsborough, California, on the date the petition was filed in this case.

Charlotte Marie Scott (petitioner) began working for Digital Equipment Corp. in 1985. Petitioner worked 13 years for Digital Equipment Corp. until she was laid off in 1998. During her employment with Digital Equipment Corp., petitioner set up an Individual Retirement Account (IRA). This IRA was established through Donaldson, Lufkin and Jenrette Securities Corp. as an agent for Gruntal and Co., LLC. At the end of her employment, this account was valued at about $30,000.

After being laid off from Digital Equipment Corp., petitioner received unemployment benefits for the remainder of 1998 to April 1999, when she was employed by High Voltage Engineering Corp. (referred to as Robicon). Petitioner worked for Robicon from April to October 1999, when she was again laid off. While with Robicon, petitioner became a member of her

employer's 401(k) qualified retirement plan. This retirement plan was established by Robicon through Vanguard Fiduciary Trust Co. At the time of her dismissal from Robicon, the plan was valued at about $1,170. After her dismissal from Robicon, petitioner once again began to receive unemployment benefits for the remainder of 1999.

Petitioner moved from Pennsylvania to California in January 2000 to care for her sister. Petitioner was receiving unemployment benefits from the Commonwealth of Pennsylvania when she moved to California. However, petitioner did not receive unemployment benefits from California in 2000 because she was not eligible.

During 2000, petitioner had a sporadic employment record. Between January and April 2000, petitioner was employed on a "project by project" basis by Changing Places, a packing and moving company. From April 2000 until the end of the year, petitioner was employed on a "project by project" basis designing closets by Ronald Duerksen. Petitioner earned purely commission income from her employment with Ronald Duerksen, and such compensation was reported on her Schedule C, Profit or Loss From Business.

During 1999, petitioner had COBRA medical insurance coverage due to her previous employment at Robicon. Petitioner paid a $239 per month insurance premium for the insurance policy, which

covered only herself.  However, in 2000, petitioner extended her COBRA coverage to include her husband, which resulted in her premiums increasing to $772 per month.  Petitioner was notified in 2001 that such coverage was canceled retroactively to November 2000 due to unpaid premiums.  Petitioner would eventually file for bankruptcy in 2001.

During 2000, the year in issue, petitioner withdrew $1,168.39 from her Vanguard 401(k) qualified retirement plan and $10,000 from her Gruntal IRA.  Petitioner did not roll over the distributed amounts into another qualified employee retirement plan or individual retirement plan.  Petitioner reported the $11,168.39 combined amount withdrawn on her 2000 Federal income tax return.  Although the amount of the distributions was reported on the return, petitioner did not compute the 10-percent additional tax due for the early withdrawals.  Petitioner, who was born in 1948, was 52 years of age in 2000 when the distributions were made.

Petitioner filed a joint Federal income tax return with her then-husband, Robert J. Scott, for the taxable year 2000. Between January and July 2000, Mr. Scott was a salesman with the Pittsburgh Post Gazette.  In July, he moved to San Francisco, California, to live with petitioner and began work with the San Francisco Chronicle, where he remained employed until November when he left for Florida.

In the notice of deficiency, the Commissioner determined a deficiency in the amount of $1,000.11.[1]  This amount represents a 10-percent additional tax on the early IRA distribution pursuant to section 72(t).[2]

Although admitting that the early distributions were made, the gist of petitioner's contention is that she is not liable for the additional tax on the IRA distribution because it was (1) used to pay medical insurance premiums and therefore met the requirements of the section 72(t)(2)(D) exception, (2) used to pay medical expenses and therefore met the requirements of section 72(t)(2)(B), and/or (3) made because of financial hardship, therefore making the application of the 10-percent additional tax inequitable.

Section 72(t)(1) generally imposes a 10-percent additional tax on early distributions from "a qualified retirement plan (as defined in section 4974(c))," unless the distributions come within one of several statutory exceptions.

The parties do not dispute that petitioner's accounts were qualified employee retirement plans and that petitioner did not "roll over" her distributions pursuant to section 408(d)(3).

[1]The record is unclear as to how the Commissioner calculated the amount of deficiency.

[2]The Commissioner's notice of deficiency mentioned the additional tax only with regard to petitioner's IRA distribution; there was no mention of her 401(k) qualified retirement plan distribution.

Therefore, in order for petitioner to prevail, she must show that the distributions fall under one of the exceptions under section 72(t)(2).

With respect to section 72(t), this Court has repeatedly held that it is bound by the list of statutory exceptions enumerated in section 72(t)(2).  See, e.g., Arnold v. Commissioner, 111 T.C. 250, 255-256 (1998); Schoof v. Commissioner, 110 T.C. 1, 11 (1998); Clark v. Commissioner, 101 T.C. 215, 224-225 (1993); Swihart v. Commissioner, T.C. Memo. 1998-407; Pulliam v. Commissioner, T.C. Memo. 1996-354; Roundy v. Commissioner, T.C. Memo. 1995-298, affd. 122 F.3d 835 (9th Cir. 1997).

The exceptions relevant to the case at hand are found in section 72(t)(2)(D) and section 72(t)(2)(B).  Section 72(t)(2)(D), provides that the following distributions are not subject to the additional tax:

> (i) In General.--Distributions from an individual retirement plan to an individual after separation from employment--
>
> > (I) if such individual has received unemployment compensation for 12 consecutive weeks under any Federal or State unemployment compensation law by reason of such separation,
> >
> > (II) if such distributions are made during any taxable year during which such unemployment compensation is paid or the succeeding taxable year, and
> >
> > (III) to the extent such distributions do not exceed the amount paid during the taxable year for

insurance described in section 213(d)(1)(D) with respect to the individual * * * .

(ii) Distributions After Reemployment.--Clause (i) shall not apply to any distribution made after the individual has been employed for at least 60 days after the separation from employment to which clause (i) applies.

(iii) Self-Employed Individuals.--To the extent provided in regulations, a self-employed individual shall be treated as meeting the requirements of clause (i)(I) if, under Federal or State law, the individual would have received unemployment compensation but for the fact the individual was self-employed.

Section 72(t)(2)(D) provides that the additional tax on early distributions does not apply to "Distributions from an <u>individual retirement plan</u> to an individual".  (Emphasis added.) An "individual retirement plan" is defined as:  "(A) an individual retirement account described in section 408(a), and (B) an individual retirement annuity described in section 408(b)."  Sec. 7701(a)(37) (an individual retirement plan is commonly referred to as an IRA).

It is clear that the retirement plan established by Robicon, from which petitioner withdrew the $1,168.39 distribution, was a qualified retirement plan described in section 401(a), and, therefore, the exception contained in section 72(t)(2)(D) does not apply.  Under the statutory language it is clear that section 72(t)(2)(D) does not apply to petitioner's 401(k) qualified retirement plan distribution.

After petitioner was dismissed from employment at Robicon at the end of October 1999, she claims she received unemployment benefits for the remainder of 1999.  However, petitioner also testified that she was "sporadically" employed between January and April 2000.  Petitioner stated that she requested her 401(k) qualified retirement plan distribution in January 2000.  Therefore, even if section 72(t)(2)(D) did apply to such distribution, based upon the record, this Court is unable to find that petitioner received unemployment compensation for 12 consecutive weeks in the year of the distribution or the preceding year as required by section 72(t)(2)(D)(i)(I).

Petitioner has not substantiated receiving unemployment compensation for 12 consecutive weeks in the year of the distribution from her IRA or the preceding year.  Id.  Therefore, she has not fulfilled the requirements of section 72(t)(2)(D) with respect to her IRA, which would have enabled her to receive a portion of her IRA distribution without paying the 10-percent additional tax.[3]  We conclude that petitioner is not entitled to an exception under section 72(t)(2)(D) from the 10-percent additional tax imposed by section 72(t).  See sec. 72(t)(2)(D).

--------

[3]We note that even if petitioner had satisfied the requirements of sec. 72(t)(2)(D), the sec. 72(t)(2)(D) exception would have applied only to $7,723.60 of the $11,168 distribution, which was the amount substantiated as used to pay for health insurance premiums from January to October 2000, due to the fact that petitioner's insurance was canceled retroactively to November 2000 for nonpayment.

In the petition to this Court, it is unclear whether petitioner contended that her distributions were not subject to the 10-percent additional tax because they were used for medical expenses under section 72(t)(2)(B). However, petitioner introduced evidence that would suggest that such a claim might be relevant; therefore, we shall discuss this contention.

Section 72(t)(2)(B) provides that the following distributions are not subject to the additional tax:

> (B) Medical Expenses.--Distributions made to the employee * * * to the extent such distributions do not exceed the amount allowable as a deduction under section 213 to the employee for amounts paid during the taxable year for medical care (determined without regard to whether the employee itemizes deductions for such taxable year).

The deduction allowed under section 213(a) is for "the expenses paid during the taxable year, * * * for medical care * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income."

On petitioner's Schedule A, Itemized Deductions,[4] petitioner calculated that the total medical and dental expenses paid by her and her husband in 2000 was $3,365. Petitioner's 2000 Federal income tax return reflects that her and her husband's joint adjusted gross income was $54,340. Therefore, 7.5 percent of

---

[4]Petitioner decided against itemizing her deductions and instead used the standard deduction in her 2000 joint Federal income tax return. However, petitioner introduced her Schedule A, Itemized Deductions, into evidence in this case.

their 2000 adjusted gross income was $4,076.  Thus, petitioner's expenses paid for medical care in 2000 did not satisfy the requirements of section 72(t)(2)(B).  Therefore, the distributions do not fall under the exception of section 72(t)(2)(B).

Finally, petitioner contends that, because of her financial hardship, the $11,168 should not be subject to the 10-percent additional tax imposed by section 72(t).  Petitioner seeks relief from the 10-percent additional tax imposed on her distributions based on her financial hardship.  There is, however, no hardship exception in the controlling statute, section 72(t).  This principle has been applied consistently in cases dealing with premature IRA distributions.  See Arnold v. Commissioner, 111 T.C. at 255; Gallagher v. Commissioner, T.C. Memo. 2001-34; Deal v. Commissioner, T.C. Memo. 1999-352; Pulliam v. Commissioner, T.C. Memo. 1996-354.  Thus, the IRA distribution received by petitioner is subject to the 10-percent additional tax under section 72(t).

Moreover, petitioner alluded that her requests for her distributions in 2000 were based on reliance of advice given to her by her accountant.  The authoritative sources of Federal tax law are the statutes, regulations, and judicial decisions. Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979); Green v.

<u>Commissioner</u>, 59 T.C. 456, 458 (1972).  We have applied the relevant statute, and we have concluded that respondent correctly applied the law in this case.  Respondent's imposition of the additional tax is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.