T.C. Summary Opinion 2005-42


UNITED STATES TAX COURT


JAMES PETERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17514-03S.                    Filed April 14, 2005.


    James Peters, pro se.

    <u>Laura A. McKenna</u>, for respondent.


    POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

    [1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a $1,234 deficiency in petitioner's 2000 Federal income tax. The issues are whether a $4,921 distribution to petitioner from an individual retirement account (IRA) was includable in his gross income and is subject to the 10-percent additional tax imposed by section 72(t).

At the time the petition was filed, petitioner was a resident of Deerfield Beach, Florida.

## Background

Petitioner was employed by Preferred Respiratory from 1987 through 1999. The company created an IRA for his benefit, and it was administered by Sterling Trust Company (Sterling Trust). The IRA had three assets: A cash balance, an OppenheimerFunds investment, and a participant's note in a retail shopping center project called Allen's Creek.[2] During the year at issue these assets were valued at $96.83, $2,471.23, and $2,353, respectively. The Allen's Creek project was managed by BSB Management Group, Inc., which was owned by Bruce Butler (Mr. Butler). Petitioner was the only named beneficiary of the IRA.

In a letter dated March 13, 2000, Sterling Trust notified petitioner of its intention to resign as trustee of his IRA on April 30, 2000, because it was no longer feasible to administer accounts holding investments affiliated with Mr. Butler.

---

[2] In the transcript this entity is referred to as Ellen's Creek, but all documents refer to this as Allen's Creek.

Petitioner was informed that if he wanted Sterling Trust to transfer the assets and cash directly into another IRA, he would have to forward to them the appropriate forms of a successor trustee before April 30, 2000. Sterling Trust explained that a direct transfer of the IRA's assets and cash to another IRA account on or before April 30, 2000, would not be reported to the Internal Revenue Service. Sterling Trust further explained that if petitioner did not initiate a direct transfer into a successor IRA, they would be forced to distribute the assets to him directly, resulting in a reportable, taxable event that would subject him to a "10% premature penalty" if he did not then transfer the assets and cash into another IRA within 60 days of the distribution.

Petitioner also received a letter regarding Sterling Trust's resignation as trustee from Mr. Butler. Mr. Butler suggested JW Genesis Securities, Inc. (Genesis) as a successor trustee and told petitioner to contact him for the appropriate forms.

Petitioner did not contact Sterling Trust before their resignation as his IRA trustee. On May 31, 2000, Sterling Trust distributed all of the assets in the IRA directly to petitioner. Ownership of the OppenheimerFunds investment and the Allen's Creek note was transferred to petitioner, and Sterling Trust issued petitioner a check for the cash balance. Petitioner eventually cashed out the OppenheimerFunds investment and used

the money, along with the IRA cash balance, for personal expenses. Mr. Butler filed for bankruptcy in 2004, and petitioner is currently pursuing a claim for the recovery of his Allen's Creek investment as one of Mr. Butler's creditors.[3] Petitioner does not dispute his ownership of the Allen's Creek note.

Prior to trial, petitioner agreed and stipulated that he received and failed to roll over the distributed assets valued at $96.83 and $2,471.23, representing the cash balance and the OppenheimerFunds investment respectively. Petitioner disputes the inclusion of the value of his Allen's Creek note in income and the imposition of the 10-percent additional tax.

### Discussion

1. Tax Treatment on Distributions

Section 408(d)(1) provides that any amount paid or distributed out of an IRA shall be included in gross income by the distributee in the manner provided under section 72. Section 408(d)(3)(A) provides that section 408(d)(1) will not apply if the entire amount received from an IRA distribution to the individual for whose benefit the account is maintained is rolled over into another IRA for the benefit of such individual no later than 60 days after the receipt of the distribution.

---

[3] Apparently petitioner also invested in another real estate project with Mr. Butler. This investment was not an asset of petitioner's Sterling Trust IRA.

Under section 408(d)(3)(A), petitioner had until July 31, 2000, to effectuate a tax-free rollover of the entire amount he received from the distribution of May 31, 2000. Even though petitioner agrees that he received and failed to roll over the cash balance and OppenheimerFunds investment, he asserts that he did roll over the Allen's Creek note, or at least that he attempted to. He testified that he signed papers with Mr. Butler authorizing a rollover into an IRA administered by Genesis. Unfortunately, petitioner presented nothing other than his own testimony, which is most unclear, that any rollover occurred on or before July 31, 2000. As no IRA for petitioner's benefit with Genesis appears to exist, the 60-day exception to section 408(d)(1) cannot apply to this distribution.

Petitioner further alleges that his Allen's Creek note was misappropriated by Mr. Butler. An alleged misappropriation of funds still does not qualify as a tax-free rollover, and there is no exception or waiver of the 60-day rollover time period in cases of fraud or embezzlement.[4] Accordingly, as provided by section 408(d)(1), the entire $4,921 of the May 31, 2000, IRA distribution, which includes the Allen's Creek note, is includable in petitioner's 2000 gross income under section 72.

---

[4] Petitioner has not disputed the fair market value of the Allen's Creek note at the time of the distribution of the note from the IRA. It would appear that if there was a theft, the theft occurred after the distribution.

2.    10-Percent Additional Tax on Early Distributions

Section 72(t)(1) imposes an additional 10-percent tax on that portion of a distribution from a qualified retirement plan that is includable in the taxpayer's gross income.  The 10-percent additional tax does not apply to certain distributions as set forth in section 72(t)(2).  Generally these exceptions include distributions made on or after the date the employee reaches the age of 59-1/2, sec. 72(t)(2)(A)(i), made to a beneficiary on or after the death of the employee, sec. 72(t)(2)(A)(ii), and when attributable to a disability of the employee, sec. 72(t)(2)(A)(iii).

Petitioner does not argue that any of the statutory exceptions under section 72(t)(2) apply to his situation, and indeed none of them do.  Instead, he is seeking relief on the grounds that because the distribution from his IRA did not cash-out his Allen's Creek investment he should not be subject to the 10-percent additional tax.  He testified that he is having financial problems, needs the immediate use of the money he invested in the Allen's Creek project, and that if he had received this amount as a cash distribution he would not object to paying the tax owed.

However unfortunate petitioner's situation may be, there is no exception under section 72(t) for financial hardship.  This principle has been applied consistently in cases dealing with

premature IRA distributions.  See Arnold v. Commissioner, 111 T.C. 250, 255 (1998); Gallagher v. Commissioner, T.C. Memo. 2001-34; Deal v. Commissioner, T.C. Memo. 1999-352; Pulliam v. Commissioner, T.C. Memo. 1996-354.  Furthermore, there is no exception regarding in-kind distributions of IRA assets, and this Court has repeatedly ruled that it is bound by the list of statutory exceptions enumerated in section 72(t)(2).  See, e.g., Arnold v. Commissioner, supra at 255; Schoof v. Commissioner, 110 T.C. 1, 11 (1998); Clark v. Commissioner, 101 T.C. 215, 224-225 (1993).  As the legislative history of section 408(f), the predecessor to section 72(t), explains, the purpose of the 10-percent additional tax was to discourage early distributions from retirement plans because "Premature distributions frustrate the intention of saving for retirement".  S. Rept. 93-383, at 134 (1974), 1974-3 C.B. (Supp.) 80, 213.  Petitioner is therefore subject to the 10-percent additional tax under section 72(t) on the entire amount of the IRA distribution.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.