T.C. Summary Opinion 2008-28


UNITED STATES TAX COURT


MICHAEL J. KULZER AND JAN K. BIELMAN-KULZER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20730-05S.          Filed March 12, 2008.


Michael J. Kulzer, pro se.

Monica Dianne Gingras, for respondent.


WHALEN, Judge:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any
other case.  All section references are to the Internal Revenue
Code in effect for the year in issue, and all Rule references are

to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

This case involves petitioners' petition for redetermination of the deficiency of $2,500 determined in their Federal income tax for tax year 2002. The sole issue is whether petitioners are liable for the 10-percent additional tax on early distributions from qualified retirement plans imposed by section 72(t)(1) with respect to a distribution of $25,000 from an individual retirement account (IRA) held by Michael J. Kulzer (petitioner) in the Orange County Teachers Federal Credit Union (hereinafter referred to as OCTFCU).

The parties have stipulated some of the facts in this case, and the stipulation of facts filed by the parties is hereby incorporated in this opinion.

Petitioners are husband and wife. At the time they filed their petition, petitioners resided in California.

For both taxable years 2001 and 2002, petitioners filed a joint return pursuant to section 6013(a). Petitioners' return for 2001 includes a Schedule C, Profit or Loss From Business, for a business operated by petitioner called "Income Tax Preparation". Petitioners' return for 2002 includes a Schedule C-EZ, Net Profit From Business, for the same income tax preparation business.

Petitioners' return for 2002 reports taxable "pensions and annuities" of $25,000 on line 16b. This is the distribution at issue. By the end of 2002, petitioner, who was born in 1953, had not attained age 59-1/2, and there is nothing in petitioners' return to suggest that the distribution is not subject to the additional tax imposed by section 72(t)(1). For example, no Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, is attached to the return claiming that the distribution is eligible for any of the exceptions to the tax enumerated in section 72(t)(2). Accordingly, respondent issued a notice of deficiency to petitioners in which he determined that the amount reported on line 16b of petitioners' 2002 return, $25,000, was an early distribution from a qualified retirement plan which is subject to the 10-percent additional tax imposed by section 72(t)(1).

During 2001, the year before the year in issue, petitioners had received a distribution of $12,118 from petitioner's IRA in the OCTFCU. During that year they had also received four distributions totaling $76,180 from one or more retirement accounts with SBC Communication, Inc. (hereinafter referred to as SBC), of $10,000, $10,000, $12,000, and $44,180. The last distribution of $44,180 was the balance of a loan from petitioner's section 401(k) account that was not repaid within 60 days of the termination of petitioner's employment with SBC.

Attached to petitioners' 2001 return are three Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. Those Forms 1099-R, which were prepared by petitioner, show the following distributions to petitioner:

| Distribution | Amount |
|---|---|
| OCTFCU | $12,118 |
| SBC 1, 2, 3 | 32,000 |
| SBC 401K | 44,180 |
| Total | 88,298 |

Petitioners' return for 2001 reports "Total IRA distributions" of $12,118 on line 15b and "Total pensions and annuities" of $76,180 on line 16b. The latter amount comprises the distributions from petitioner's retirement account or accounts with SBC (viz $32,000 plus $44,180).

Attached to petitioners' 2001 return is Internal Revenue Service Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts. Part I of that form, dealing with the "Tax on Early Distributions", reports that early distributions of $88,298 are included in petitioners' gross income. Of that amount, Form 5329 reports that $63,298 is subject to the additional tax under section 72(t)(1) and $25,000 is not subject to the additional tax on account of an "appropriate exception". The exception claimed on the form is for:

> Distributions made as part of a series of substantially equal periodic payments (made at least annually) for your life (or life expectancy) or the joint lives (or joint life expectancies) of you and your designated beneficiary (if from an employer plan, payments must begin after separation from service).

During 2003 petitioners received a distribution of $36,439 from OCTFCU. Petitioner claims that petitioners retained $12,000 of that amount and rolled over the remainder, $24,439, to another retirement account. During 2004 petitioners received a distribution of $70,000 from Pershing, LLC. Mr. Kulzer claims that petitioners retained $12,000 of that amount and rolled over the remainder, $58,000, to another retirement account. Finally, during 2005 petitioners received a distribution of $17,000, but the record does not disclose the payor of that distribution.

As stated above, the sole issue is whether the distribution of $25,000 from petitioner's IRA account with OCTFCU, which is reported on petitioners' return for taxable year 2002, is subject to the 10-percent additional tax imposed by section 72(t)(1) on early distributions from qualified retirement plans. Petitioners argue that the distribution is one of a series of substantially equal annual payments made for petitioner's life expectancy and, as such, is not subject to the additional tax, pursuant to section 72(t)(2)(A)(iv). Petitioners concede that if the subject distribution does not qualify for the exception provided by section 72(t)(2)(A)(iv), then it is subject to the 10-percent

additional tax on early distributions imposed by section 72(t)(1).

Initially, the Internal Revenue Service promulgated guidance concerning the exception for substantially equal periodic payments in Notice 89-25, Q&A-12, 1989-1 C.B. 662, 666. That notice states that payments will be considered to be substantially equal periodic payments if the annual payment is determined by one of three methods: (1) Under a method that would be acceptable for purposes of calculating the minimum distribution required under section 401(a)(9); (2) by amortizing the taxpayer's account balance over the life expectancy of the account owner or the joint life and last survivor expectancy of the account owner and beneficiary at an interest rate that does not exceed a reasonable interest rate on the date payments commence; or (3) by dividing the taxpayer's account balance by an annuity factor (the present value of an annuity of $1 per year beginning at the taxpayer's age attained in the first distribution year and continuing for the life of the taxpayer) with such annuity factors derived using a reasonable mortality table and using an interest rate that does not exceed a reasonable interest rate on the date payments commence.

Notice 89-25, supra, also refers to the so-called recapture rule set forth in section 72(t)(4) which applies if the series of periodic payments is subsequently modified (other than by death

or disability) within 5 years of the date of the first payment or, if later, before the employee attains age 59-1/2.  In that event, section 72(t)(4) provides that the exception to the 10-percent additional tax set forth in section 72(t)(2)(A)(iv) does not apply and the taxpayer's tax for the year of the modification shall be increased by an amount which is equal to the amount which would have been imposed, plus interest for the deferred period.

In Rev. Rul. 2002-62, 2002-2 C.B. 710, the Internal Revenue Service promulgated further guidance about what constitutes a series of substantially equal periodic payments, within the meaning of section 72(t)(2)(A)(iv).  It states that payments will be considered to be substantially equal periodic payments if they are made in accordance with one of the three methods described in Notice 89-25, Q&A-12:  The required minimum distribution method, the fixed amortization method, or the fixed annuitization method.

Rev. Rul. 2002-62, sec. 202(d), 2002-2 C.B. at 711, describes how to determine the account balance used to determine periodic payments, as follows:

> (d) Account balance.  The account balance that is used to determine payments must be determined in a reasonable manner based on the facts and circumstances. For example, for an IRA with daily valuations that made its first distribution on July 15, 2003, it would be reasonable to determine the yearly account balance when using the required minimum distribution method based on the value of the IRA from December 31, 2002, to July 15, 2003.  For subsequent years, under the required minimum distribution method, it would be reasonable to

use the value either on December 31 of the prior year or on a date within a reasonable period before that year's distribution.

Rev. Rul. 2002-62, sec. 202(e), 2002-2 C.B. at 711, also discusses the effect of changes to account balances, as follows:

(e) Changes to account balance. Under all three methods, substantially equal periodic payments are calculated with respect to an account balance as of the first valuation date selected in paragraph (d) above. Thus, a modification to the series of payments will occur if, after such date, there is (i) any addition to the account balance other than gains or losses, (ii) any nontaxable transfer of a portion of the account balance to another retirement plan, or (iii) a rollover by the taxpayer of the amount received resulting in such amount not being taxable. [Emphasis supplied.]

As mentioned above, if there is a "modification" within a 5-year period beginning on the date of the first payment or, if later, before the employee attains age 59-1/2, then the recapture rule of section 72(t)(4) provides that the exception to the 10-percent additional tax does not apply, and the taxpayer's tax for the year of modification shall be increased by an amount which, but for the exception, would have been imposed, plus interest for the deferral period. Sec. 74(t)(4).

Rev. Rul. 2002-62, supra, also provides authorization for taxpayers to make a one-time change to the required minimum distribution method. Rev. Rul. 2002-62, sec. 2.03(b), 2002-2 C.B. at 711, states as follows:

One-time change to required minimum distribution method. An individual who begins distributions in a year using either the fixed amortization method or the fixed annuitization method may in any subsequent year

switch to the required minimum distribution method to determine the payment for the year of the switch and all subsequent years and the change in method will not be treated as a modification within the meaning of § 72(t)(4). Once a change is made under this paragraph, the required minimum distribution method must be followed in all subsequent years. Any subsequent change will be a modification for purposes of § 72(t)(4).

Petitioners claim that Mr. Kulzer used the "fixed amortization method" described in Notice 89-25, supra, to compute the substantially equal periodic payments to be withdrawn from his retirement account(s). Thus the parties agree that the fixed amortization method described in Notice 89-25, supra, is a permissible way in which to calculate a series of substantially equal periodic payments for purposes of section 72(t)(2)(A)(iv).

Notice 89-25, Q&A-12, 1989-1 C.B. at 666, describes the fixed amortization method as follows:

> Payments will also be treated as substantially equal periodic payments within the meaning of section 72(t)(2)(A)(iv) if the amount to be distributed annually is determined by amortizing the taxpayer's account balance over a number of years equal to the life expectancy of the account owner or the joint life and last survivor expectancy of the account owner and beneficiary (with life expectancies determined in accordance with proposed section 1.401(a)(9)-1 of the Regulations) at an interest rate that does not exceed a reasonable interest rate on the date payments commence. For example, a 50 year old individual with a life expectancy of 33.1, having an account balance of $100,000, and assuming an interest rate of 8 percent, could satisfy section 72(t)(2)(A)(iv) by distributing $8,679 annually, derived by amortizing $100,000 over 33.1 years at 8 percent interest.

An "addendum" to petitioner's letter to an Appeals officer of the Internal Revenue Service dated October 16, 2006, describes his calculation as follows:

> The purpose of this addendum is to certify, that while I do not have a record of my original calculations that I used to determine my Equal Pay exception, this is my best memory of how I arrived at that amount.
>
> In April 2001, I reached 48 years of age.  My IRA balances were $286,000.00 [sic]  I found an insurance mortality table that estimated my life expectancy at 75, so I used 27 years for my calculation.
>
> I used an 8% interest rate (I remember that because my dad suggested I use 5%, but of course I knew better) [sic]

Attached to petitioner's addendum is a schedule purporting to show the amortization of $286,000 over 27 years at "8-percent interest" with annual payments of $25,000.  Petitioner's schedule is reproduced as follows:

| Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 | Col. 6 |
|--------|--------|--------|--------|--------|--------|
| 8.00% | 286,000 | | | | 36,542 |
| 1 | 286,000 | 25,000 | 261,000 | 21,880 | 282,880 |
| 2 | 282,880 | 25,000 | 257,880 | 21,630 | 279,510 |
| 3 | 279,510 | 25,000 | 254,510 | 21,361 | 275,871 |
| 4 | 275,871 | 25,000 | 250,871 | 21,070 | 271,941 |
| 5 | 271,941 | 25,000 | 246,941 | 20,755 | 267,696 |
| 6 | 267,696 | 25,000 | 242,696 | 20,416 | 263,112 |
| 7 | 263,112 | 25,000 | 238,112 | 20,049 | 258,161 |
| 8 | 258,161 | 25,000 | 233,161 | 19,653 | 252,814 |
| 9 | 252,814 | 25,000 | 227,814 | 19,225 | 247,039 |
| 10 | 247,039 | 25,000 | 222,039 | 18,763 | 240,802 |
| 11 | 240,802 | 25,000 | 215,802 | 18,264 | 234,066 |
| 12 | 234,066 | 25,000 | 209,066 | 17,725 | 226,791 |
| 13 | 226,791 | 25,000 | 201,791 | 17,143 | 218,935 |
| 14 | 218,935 | 25,000 | 193,935 | 16,515 | 210,449 |
| 15 | 210,449 | 25,000 | 185,449 | 15,836 | 201,285 |
| 16 | 201,285 | 25,000 | 176,285 | 15,103 | 191,388 |
| 17 | 191,388 | 25,000 | 166,388 | 14,311 | 180,699 |

| 18 | 180,699 | 25,000 | 155,699 | 13,456 | 169,155 |
| 19 | 169,155 | 25,000 | 144,155 | 12,532 | 156,688 |
| 20 | 156,688 | 25,000 | 131,688 | 11,535 | 143,223 |
| 21 | 143,223 | 25,000 | 118,223 | 10,458 | 128,680 |
| 22 | 128,680 | 25,000 | 103,680 | 9,294 | 112,975 |
| 23 | 112,975 | 25,000 | 87,975 | 8,038 | 96,013 |
| 24 | 96,013 | 25,000 | 71,013 | 6,681 | 77,694 |
| 25 | 77,694 | 25,000 | 52,694 | 5,216 | 57,909 |
| 26 | 57,909 | 25,000 | 32,909 | 3,633 | 36,542 |
| 27 | 36,542 | 25,000 | 11,542 | 1,923 | 13,466 |

We note four preliminary points about petitioner's calculation. First, the annual account balance is reduced by $25,000 (see col. 4, above) before the stated interest rate, 8 percent, is applied to the balance (see col. 5, above). The amount of interest, thus computed, is then increased by $1,000. Presumably, this $1,000 increase is intended to be the interest on the $25,000 payment. In making the calculation in this way, we believe that the real rate of interest used in petitioner's calculation is 7.5013149 percent, not 8 percent.

Second, according to petitioner's calculation the account balance is not fully amortized by the end of the 27th year. As shown in petitioner's schedule, reproduced above, there remains a balance of $13,466 at the end of the 27th year. Therefore, petitioner's calculation uses slightly more than 27 years to amortize the account balance.

Third, petitioner states that the life expectancy of 27 years is based upon "an insurance mortality table" that he "found". Significantly, this life expectancy is substantially less than the life expectancy that would be determined in

accordance with section 1.401(a)(9)-1, Proposed Income Tax Regs., 52 Fed. Reg. 28075 (July 27, 1987). According to the single life expectancy table in section 1.401(a)(9)-9, Q&A-1, Income Tax Regs., the life expectancy of a 48-year-old person is 36 years.

Finally, using traditional methods of financial calculation, we believe that annual payments of $26,154.16 would have to be made to amortize $286,000 over 27 years at 8 percent interest. According to our calculation, we also believe that annual payments of $24,408.58 would be necessary in order to amortize $286,000 over 36 years at 8 percent interest.

As stated above, petitioner claims that the subject distribution of $25,000 from his IRA in the OCTFCU is a part of the series of substantially equal periodic payments that began in 2001. He claims to have computed this amount using the fixed amortization method described by Notice 89-25, supra.

Under the fixed amortization method described by Notice 89-25, supra, the amount of the periodic payment, once computed, does not change. The amount is "fixed" and is distributed from the taxpayer's retirement account at each chosen period thereafter ("not less frequently than annually"). See Notice 89-25, supra.

The following distributions were made from petitioner's retirement accounts:

| Year | SBC 1, 2, 3 | SBC 401K | OCTFCU | Other |
|------|-------------|----------|--------|-------|
| 2001 | $32,000 | $44,180 | $12,118 | --- |
| 2002 | --- | --- | 25,000 | --- |
| 2003 | --- | --- | 36,439 | --- |
| 2004 | --- | --- | --- | $70,000 |
| 2005 | --- | --- | --- | 17,000 |

Of the above distributions, petitioners claim that the following amounts are part of the series of substantially equal annual payments that began in 2001:

| Year | SBC 1, 2, 3 | SBC 401K | OCTFCU | Other |
|------|-------------|----------|--------|-------|
| 2001 | $25,000 | --- | --- | --- |
| 2002 | --- | --- | $25,000 | --- |
| 2003 | --- | --- | 12,000 | --- |
| 2004 | --- | --- | --- | $12,000 |
| 2005 | --- | --- | --- | 12,000 |

As shown above, the distributions that petitioners claim to be part of the series of substantially equal periodic payments were made in different amounts. The amount of the annual payment for 2001 and 2002 is $25,000, whereas the amount of each of the annual payments allegedly made after 2002 is $12,000.

Furthermore, the distributions that petitioners claim to be part of the series of substantially equal periodic payments were made from different accounts. The account from which the alleged periodic payment was distributed in 2002, i.e., OCTFCU, is different from the account from which the payment was distributed

for 2001; i.e., SBC 1, 2, 3. We also note that the payment for 2005 was distributed from still a different account.

Petitioners attempt to explain away these problems. Petitioner testified that the balance of his SBC account of $136,138.89 was rolled over to the OCTFCU in late October or November of 2002 and, thereafter, was maintained separately in that account. He testified: "they [the two accounts] were together, but they were separate because they have a sub-code that differentiates accounts." However, there is no evidence of that in the record, other than petitioner's vague and self-serving testimony.

Petitioner also testified that the change in amounts was due to the "One-time change to required minimum distribution method" permitted by Rev. Rul. 2002-62, sec. 2.03(b), quoted above. However, under the required minimum distribution method, the annual payment is recomputed each year on the basis of the account balance and the life expectancy for that year. It would be extremely unlikely, if not impossible, for the minimum distribution for 2003, 2004, and 2005 to equal the same exact amount; i.e., $12,000. At trial, petitioner stated that he had no documentation of his calculation of those amounts.

The most serious difficulty we have with petitioners' position is that the record does not establish "the taxpayer's account balance", as that phrase is used in Notice 89-25, supra,

for purposes of computing a series of substantially equal periodic payments.  In fact, considering petitioner's vague and confusing testimony, we are not even certain how many retirement accounts petitioner held with SBC during 2001 and 2002.  For example, at trial he testified that during the year 2001 he withdrew $88,298 from his retirement accounts.  He described his withdrawals as follows:

> I had several retirement accounts, including IRAs, within local, you know, credit union institutions, and I think there's probably 4 or 5 different withdrawals that between all of my retirement accounts they totaled the $88,000-plus.  * * *  I would say, to be accurate, that 44,000 of the 76,000 is my 401(k).  The remaining 32,000 on that line and the 12,000 above were from different accounts other than my 401(k).

The above testimony suggests that the distribution of $44,000 came from his section 401(k) account with SBC and "the remaining 32,000" came from a different SBC account or accounts.  This conclusion is consistent with the fact that there are two Forms 1099-R for SBC attached to petitioners' 2001 return.  One Form 1099-R reports a gross distribution of $32,000 from "SBC 1, 2, 3".  A second Form 1099-R reports a gross distribution of $44,180 from "SBC 401K".

Furthermore, there is very little evidence in the record regarding the balance of petitioner's IRA at OCTFCU or the balance of his retirement account or accounts with SBC.  The record contains only one statement from SBC dated July 18, 2001, which shows the "remaining market value" of the three accounts

included in petitioner's "SBC Savings Plan", the Employee Deferred Tax Account, the Company Contributions Account, and the Rollover Account. According to that statement, the grand total of those accounts amounted to $276,205.59 after a withdrawal of $10,000 from the rollover account. On the basis of that single statement, petitioner contends that the balance of his SBC account was $286,205.59 as of July 16, 2001, the date of the $10,000 distribution. Similarly, the record contains page 1 of only one statement from petitioner's account with OCTFCU. The other pages of the statement were not introduced into evidence. On the basis of that partial statement, petitioners contend that the balance in petitioner's OCTFCU IRA was $51,118.05 on December 1, 2001.

In a memorandum dated November 7, 2006, to respondent's attorney, petitioner attempts to explain how he had arrived at "$286,000", the account balance he used in his calculation of substantially equal periodic payments. Petitioner's memorandum states: "I cannot recreate exactly $286,000.00 but I will get very close." Petitioner's memorandum refers to the statement of his SBC account and the statement of his OCTFCU account which are described above. Petitioner's memorandum then states as follows:

```
So, if on July 18, 2001 I had:  (Attachment I)    $286,205.89
And, on December 31, 2001 I had:  (Attachment II)    51,118.05

                                                    337,323.94

Retirement accounts from above:                     337,323.94
2001 Distributions requiring 10% penalty*          ($63,298.00)

*which I paid on 2001 return                        274,025.94
```

So this reflects that sometime in 2001, after withdrawing $63,298.00 I had a balance that on this document was $274,025.94 but that was a "snapshot" of two different dates in 2001, but it's likely that sometime that year it could have been $286,000.00.

This is very close to the $286,000 I used when I tried to recreate the balances when I calculated how much I could withdraw each year using the substantially equal payments method.  [Emphasis supplied.]

As we read it, the thrust of petitioner's memorandum is that petitioner took into consideration both his OCTFCU and SBC accounts in calculating the account balance used in his computation of substantially equal periodic payments for purposes of section 72(t)(2)(A)(iv).

At trial, petitioner's testimony was different.  He stated that he took into consideration only the balance of his SBC account in computing periodic payments, and that he did not use his OCTFCU IRA in that computation.  Petitioner's testimony at trial is as follows:

BY MS. GINGRAS:

Q    Looking at this exhibit, page five, you determined that the account balance that you used for your method of calculation was $286,000?

A    Yes.

Q    And when determining that account balance, you aggregated the balance of two different retirement accounts?

A     No.  I used -- to clarify, I did not -- I said that I did not prepare this document at the time that I prepared the tax return.  I'm a budget analyst by trade.  I go to a lot of meetings.  I'm required to analyze things very quickly. So I did not put this to paper at the time I prepared my tax return.  So to answer your question, I used what I had in my SBC balance, I remembered it to be 286-, but I'd already withdrawn 10,000, so there's a document in here that shows I had a balance of 276-, so it was one account and that's what I used to calculate this amortization schedule.

THE COURT:  So -- go ahead, Counsel.

BY MS. GINGRAS:

Q     So it does not involve the Orange County Teachers Federal Credit Union account at this time?

A     Correct.

We find that the record does not identify what retirement accounts petitioner took into consideration in allegedly computing the amount of the periodic payments for purposes of section 72(t)(2)(A)(iv).  Furthermore, the record does not show the balances of those accounts at the time the first distribution was made.  Indeed, petitioner testified that he could not state the date and amount of any distribution that was a part of the distribution of $25,000 made during 2001, other than the distribution of $10,000 made by one of petitioner's SBC accounts on or about July 18, 2001.

In general, the Commissioner's determination as set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is wrong.  See Rule 142(a).  In certain circumstances, if the taxpayer introduces credible evidence with respect to a factual issue relevant to ascertaining the proper tax liability, section 7491(a) shifts the burden of proof to the Commissioner.  Sec. 7491(a)(1); Rule 142(a)(2).  Furthermore, section 7491(c) provides that the Commissioner shall have the burden of production in any court proceeding with respect to the liability of any individual for any "penalty, addition to tax, or additional amount" imposed by the Internal Revenue Code.

Petitioners do not argue that section 7491(a) is applicable, and they have not established that the burden of proof should shift to respondent, pursuant to section 7491(a).  Furthermore, as discussed above, the record shows that petitioner received a distribution of $25,000 from a qualified retirement plan during 2002, before he had attained age 59-1/2.  Thus, even if the additional tax under section 72(t) is a "penalty, addition to tax, or additional amount" within the meaning of section 7491(c), a point we do not decide, there is ample evidence in the record to satisfy any burden of production imposed by section 7491(c).

Accordingly, petitioners bear the burden of proving that respondent's determination in the notice of deficiency is erroneous. See Rule 142(a). In order for petitioners to prevail, they must prove that the distribution of $25,000 made in 2002 by petitioner's IRA in the OCTFCU is part of a series of substantially equal periodic payments, as described by section 72)(t)(2)(A)(iv). See Arnold v. Commissioner, 111 T.C. 250, 255 (1998). For the reasons discussed above, we find that petitioners have not met their burden of establishing that the subject distribution of $25,000 is part of a series of substantially equal periodic payments, as described by section 72)(t)(2)(A)(iv).

On the basis of the foregoing,

Decision will be entered for respondent.