T.C. Summary Opinion 2015-13

UNITED STATES TAX COURT

GUSTAVO E. MORLES, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19723-12S.                    Filed February 23, 2015.

Gustavo E. Morles, pro se.

<u>Tracey B. Leibowitz</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated April 30, 2012 (notice), respondent determined a $4,789 deficiency in petitioner's 2010 Federal income tax.

The issues for decision are:  (1) whether certain distributions from qualified retirement plans are includable in petitioner's 2010 income; if so, (2) whether any of the distributions are subject to the section 72(t) additional tax; and (3) whether petitioner is entitled to a $3,000 capital loss deduction claimed for the first time in this proceeding.

## Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioner resided in Florida.

Petitioner is a member of the faculty of the University of Phoenix (University) and, with the exception of a period of unemployment in 2010, has been so employed since 2003.  As a University employee, petitioner participated in a section 401(k) plan (plan) administered by Charles Schwab Trust Co.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

(Schwab). In 2010 petitioner received a $6,893.10 distribution from the plan (plan distribution). The plan distribution is shown on a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2010 that Schwab issued to petitioner. According to the Form 1099-R, the entire amount of the plan distribution is "taxable".

As an employee of the University, petitioner was eligible to participate in the University's employee stock purchase plan (employee stock plan) administered by Morgan Stanley Smith Barney, and he began to do so in 2007. In a series of 2010 transactions petitioner sold all of the stock he had acquired in the employee stock plan (stock sale).

During 2010 petitioner also maintained an individual retirement account (IRA) with T. Rowe Price (Price). According to a 2008 Form 5498, IRA Contribution Information, prepared by Price, petitioner's IRA was funded by an initial contribution of $1,000 in 2008. Petitioner did not claim a deduction for this IRA contribution on his 2008 Federal income tax return. As best we can tell from the record, no other contributions to or distributions from the IRA were made before petitioner received a $950.81 distribution in 2010 (IRA distribution). The IRA distribution is shown on a Form 1099-R for 2010 that Price issued to petitioner.

Petitioner had not attained the age of 59-1/2 as of the date of either the plan distribution or the IRA distribution.

During 2010 petitioner lived in an apartment that he rented from an unrelated landlord. On May 14, 2010, petitioner received a "15 Days Notice to Quit - Termination of Tenancy" (notice to quit). According to the notice to quit petitioner was required to vacate the apartment unless he paid "$7,600 in Money Order or Cashier's Check" before a specified date. Petitioner used some or all of the proceeds from the stock sale together with some or all of the plan distribution and the IRA distribution to avoid eviction.

The income reported on petitioner's 2010 Federal income tax return (return), which was prepared by a paid income tax return preparer, does not include any portion of the plan distribution or the IRA distribution. No capital gain or loss from the stock sale is shown on the return.

As relevant here, in the notice respondent: (1) increased petitioner's income by the amounts of the plan distribution and the IRA distribution; and (2) imposed the section 72(t) additional tax on both distributions.

## Discussion

Gross income includes income from any source, including annuities, endowment contracts, and pensions. See secs. 61(a)(9), (10), (11), 72.

## I. Plan Distribution

The plan distribution is includable in petitioner's income as provided in section 72. See sec. 402(a). As noted, no portion of the plan distribution is included in the income reported on the return.

According to petitioner, the plan distribution is excludable from his income because at the time of the distribution he was suffering economic hardship, including the threat of eviction. Petitioner has presented no authority for the exclusion he seeks. Nothing in section 72 suggests that such an exclusion exists, and we are aware of no other provision of the Internal Revenue Code that would allow for one.

Although we sympathize with petitioner, we agree with respondent that the entire plan distribution is includable in petitioner's 2010 income under section 72(a) and (e). Accordingly, respondent's adjustment to that end is sustained.

## II. IRA Distribution

The IRA distribution is treated as a distribution from an individual retirement plan and is also includable in petitioner's income in the manner provided under section 72. See secs. 408(d)(1), 7701(a)(37). Because the IRA distribution was not received as an annuity, section 72(e) applies. Simply stated, that section provides that the taxpayer's investment in the contract is taken into

account in determining the portion of the distribution from the plan that is includable in the taxpayer's income. A taxpayer's investment in the contract is composed of nondeductible contributions to the IRA, less any withdrawals or distributions of the previously taxed contributions. Sec. 72(e)(6); Campbell v. Commissioner, 108 T.C. 54, 61-62 (1997); Hoang v. Commissioner, T.C. Memo. 2006-47. The portion of a distribution from an individual retirement account that represents the taxpayer's investment in the contract is not includable in the taxpayer's income. See sec. 72(e).

As noted, petitioner did not claim a deduction for the only contribution he made to the IRA before the IRA distribution. Nondeductible contributions made to an individual retirement account must be reported annually on Form 8606, Nondeductible IRAs. See sec. 408(o)(4). The Form 8606 instructions state that a taxpayer must keep copies of records, including completed Forms 8606 for previous years, in order for the taxpayer to verify the nontaxable portion of the individual retirement account withdrawal or distribution. Although nothing in the record suggests that petitioner has complied with these reporting requirements, nothing in the statutory scheme suggests that a taxpayer who fails to satisfy these reporting requirements cannot include nondeductible individual retirement account contributions in the taxpayer's investment in the contract. Taking into

account the evidence that sufficiently shows the relevant transactional history of the IRA, we find that petitioner's initial contribution to the IRA is taken into account in the computation of his investment in the contract for purposes of section 72.

Petitioner contends that no portion of the IRA distribution is includable in his income because the funds initially deposited into the IRA exceed the IRA distribution and therefore the entire IRA distribution represents nothing more than a return of his investment in the contract. In effect, petitioner argues that any distribution from a taxpayer's individual retirement account is first allocated to the taxpayer's investment in the contract. Petitioner's position is an oversimplification of how the portion of the IRA distribution includable in his income must be computed. On the other hand, respondent's position that the entire amount of the IRA distribution is includable in petitioner's income fails to take into account petitioner's investment in the contract with respect to the IRA.

Section 72(e)(3) requires that the IRA distribution be allocated between income and investment in the contract pursuant to a formula set forth in its provisions. The portion of the IRA distribution allocable to income is includable in petitioner's income; the portion allocable to petitioner's investment in the contract is not. See sec. 72(e)(2).

Guided by the provisions of section 72(e), the parties should reflect the portion of the IRA distribution includable in petitioner's income in their respective Rule 155 computations.

III. Section 72(t) Additional Tax

Section 72(t)(1) imposes a 10% additional tax on the portion of a distribution from a qualified retirement plan includable in the distributee/taxpayer's income. The term "qualified retirement plan" as used in section 72(t) includes the plan and the IRA. See secs. 72(t)(1), 401(a), (k)(1), 4974(c)(1), (4). There are a number of exceptions to the application of this additional tax, see sec. 72(t)(2), but none of the exceptions applies here.

Instead of pointing to an exception listed in section 72(t), petitioner argues that he should not be subject to the additional tax because both distributions qualify as "hardship distribution[s] to * * * avoid eviction". While it is evident that petitioner took the distributions because of a pending financial crisis, there is no hardship exception under section 72(t)(2). See Arnold v. Commissioner, 111 T.C. 250, 255 (1998) (holding that a distribution received as a result of financial hardship was subject to section 72(t) additional tax, because no exception exists for financial hardship); Milner v. Commissioner, T.C. Memo. 2004-111 (same); Gallagher v. Commissioner, T.C. Memo. 2001-34 (holding that a distribution

received by taxpayers because of financial hardship and used to pay bills, tuition at their son's private high school, and other personal expenses was subject to section 72(t) additional tax); Robertson v. Commissioner, T.C. Memo. 2000-100, (holding that a distribution used for the taxpayer's "own subsistence and that of her family" was subject to section 72(t) additional tax), aff'd, 15 Fed. Appx. 467 (9th Cir. 2001); Pulliam v. Commissioner, T.C. Memo. 1996-354 (holding that a distribution received by taxpayer because of financial hardship and used to pay off his debts was subject to section 72(t) additional tax).

It follows that the entire plan distribution and the portion of the IRA distribution includable in petitioner's income are subject to the additional tax imposed by section 72(t).

IV.  Capital Loss Deduction

The return does not reflect any gain or loss resulting from the stock sale. Petitioner now claims entitlement to a $3,000 capital loss deduction stemming from that sale.

Gain or loss from the sale or other disposition of property is computed with reference to the amount realized from the disposition of the property and the property's adjusted basis.  See sec. 1001(a).  In general, adjusted basis is

determined with reference to the cost of the property, <u>see</u> sec. 1012, adjusted as provided in section 1016.

The transaction statements generated in connection with the stock petitioner acquired in the employee stock plan show the acquisition and the disposition of the stock that petitioner acquired as a participant. The statements, however, do not support petitioner's claim to the capital loss deduction. Furthermore, petitioner's testimony on the amount he claims as his basis in the stock is not sufficient to support a finding that the basis is as he claims. Consequently, petitioner is not entitled to the capital loss deduction here in dispute.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.