T.C. Memo. 2016-182

UNITED STATES TAX COURT

DORA MARIE MARTINEZ AND CARLOS GARCIA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8483-15.                              Filed September 28, 2016.

Steven Ray Mather, for petitioners.

Jenny R. Casey and Sebastian Voth, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined an $8,320 deficiency and a $1,664

penalty under section 6662(a) with respect to petitioners' Federal income tax for

2012.  The issues for decision are:  (1) whether the unpaid balances of loan

amounts that Dora Martinez (petitioner) borrowed from her section 403(b)

qualified employer retirement plan (QP) were deemed distributions of taxable

[*2] income in 2012 and subject to a 10% additional tax, (2) whether petitioners had other unreported income in 2012 of $300 of interest, $195 of cost of current life insurance protection, and $162 of education program payments received as a distribution from their section 529 qualified tuition program (QTP) and subject to a 10% additional tax, and (3) whether petitioners are liable for the section 6662(a) penalty for 2012. Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in California when they filed their petition.

For the period relevant to this case, petitioner was employed as a teacher by the Los Angeles Unified School District (LAUSD), and Garcia, her spouse, was employed as a truck driver by Kellogg Sales Co. Petitioner decided to borrow from her LAUSD QP as a means of avoiding foreclosure on their residence.

On July 29, 2010, she requested two loans from her LAUSD QP: a loan of $28,899 from an account administered by North American Co. for Life & Health Insurance (NAMCO), and a loan of $4,085 from an account administered by

[*3] Midland National Life Insurance Co. (Midland). Each loan agreement indicated that the loan was to be repaid in quarterly payments over a five-year period and also indicated, by a checked box, that the new loan "IS NOT TO BE USED AS A RESIDENTIAL LOAN."  Petitioner signed both loan agreements, representing that she understood their terms and acknowledging that "any loan not in accordance with the requirements of I.R.C. para. 72(p) shall be considered as a deemed distribution and be reported as taxable income" and accepting "full responsibility for compliance with those requirements."  On August 12, 2010, NAMCO issued a check to petitioner for $28,899, and Midland issued a check to her for $4,085.

Petitioners made initial payments on the loans but stopped as of May 2012. They nevertheless continued to receive loan repayment notices from both NAMCO (up to January 2016) and Midland (up to October 2012).  As a result of the loan payments having not been made, NAMCO and Midland determined that petitioner had defaulted on the loans as of November 2012.  NAMCO and Midland deemed the loan balances, $20,581.85 and $2,906.92, respectively, to be taxable distributions in 2012.  They each issued to petitioner a 2012 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that reported each gross distribution (i.e., $20,581.85 for

[*4] NAMCO and $2,906.92 for Midland) as fully taxable and indicated a distribution code of "L", designating a deemed distribution.

In 2012 petitioner held an insurance policy with Conseco Life Insurance Co. (Conseco) through her employer. Using standard calculations, Conseco subsequently determined that, for 2012, petitioner received a benefit for the cost of life insurance protection of $195.68. Conseco issued to petitioner Form 1099-R reporting the $195.68 as a fully taxable distribution and indicating a distribution code of "9", designating the cost of current life insurance protection.

Petitioners maintained a QTP for their children. In 2012, petitioner withdrew $162 from the QTP. She also received interest income of $300 in 2012. Petitioner was 43 years old as of December 31, 2012.

On their jointly filed 2012 Form 1040, U.S. Individual Income Tax Return, petitioners reported only their wage income. They did not report income from the deemed distributions of the QP, the earned interest, the cost of current life insurance protection, or the withdrawal from the QTP.

OPINION

In unreported income cases, where there is no question that the taxpayer received the unreported income in issue, the taxpayer has the burden of proving by a preponderance of the evidence that the deficiency determination was arbitrary or

[*5] erroneous.  See Hardy v. Commissioner, 181 F.3d 1002, 1004-1005 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986).  Petitioner admitted during her testimony that she received the proceeds of the two QP loans and $162 from the QTP (contrary to the assertion in petitioners' posttrial brief), and petitioners stipulated that petitioner received $300 of interest income.

At trial petitioner argued, however, that she never received money from Conseco.  See Hardy v. Commissioner, 181 F.3d at 1004 (requiring, where receipt of income is not evident, that the Commissioner introduce some substantive evidence that the taxpayer received unreported income).  Petitioner nevertheless testified that she held a life insurance policy with Conseco in 2012, and the parties stipulated as an exhibit Form 1099-R--issued by Conseco and reporting petitioner's cost of current life insurance protection of $195.68--and supporting records showing how Conseco determined that cost.

Petitioner would not have actually received $195 because, as discussed below, the cost of current life insurance protection is a taxable economic benefit and not an actual payment to the participant.  The $195.68 shown on Form 1099-R is linked to a life insurance policy that petitioner held with Conseco during 2012 and is also supported by Conseco's calculation worksheets and other records.  See

[*6] Feder v. Commissioner, T.C. Memo. 2012-10, slip op. at 7 (ruling that an initial burden of production was met where the Commissioner had shown that income reported on Form 1099-R was linked to a life insurance policy held by the taxpayer).

Respondent has therefore satisfied any initial burden of production regarding the unreported income in issue. Petitioners must come forward with proof that respondent's determination is arbitrary or erroneous or that this income is otherwise not taxable.

QP Deemed Distributions

Section 402(a) provides generally that, pursuant to section 72, distributions from a QP are taxable to the distributee for the taxable year of the distribution. See Molina v. Commissioner, T.C. Memo. 2004-258, slip op. at 6. The proceeds of a loan from a QP to a participant are treated as--or deemed to be--a distribution and therefore usually includible in the participant's income. Sec. 72(p)(1)(A); see Duncan v. Commissioner, T.C. Memo. 2005-171, slip op. at 5.

Section 72(p)(2), however, provides an exception to a loan's being treated as a taxable distribution where the principal amount of the loan (when added to the outstanding balance of all other loans from the same plan) does not exceed a

[*7] specified limit, see sec. 72(p)(2)(A), and where the loan meets the

requirements provided by section 72(p)(2)(B) and (C), as follows:

SEC. 72(p).  Loans Treated as Distributions.--

*       *       *       *       *       *       *

(2) Exception for certain loans.--

*       *       *       *       *       *       *

(B) Requirement that loan be repayable within 5 years.--

(i) In general.--Subparagraph (A) shall not apply to any loan unless such loan, by its terms, is required to be repaid within 5 years.

(ii) Exception for home loans.--Clause (i) shall not apply to any loan used to acquire any dwelling unit which within a reasonable time is to be used (determined at the time the loan is made) as the principal residence of the participant.

(C) Requirement of level amortization.--Except as provided in regulations, this paragraph shall not apply to any loan unless substantially level amortization of such loan (with payments not less frequently than quarterly) is required over the term of the loan.

See also sec. 1.72(p)-1, Q&A-3(b), Income Tax Regs. (requiring, additionally, that

the loan be "evidenced by a legally enforceable agreement").  The substantially

level amortization requirement of section 72(p)(2)(C) has been interpreted as

[*8] requiring that payment of principal and interest be made in substantially level amounts over the term of the loan. See Plotkin v. Commissioner, T.C. Memo. 2001-71, slip op. at 10 (citing Estate of Gray v. Commissioner, T.C. Memo. 1995-421).

The section 72(p)(2) exception to a loan's being deemed a distribution ceases to apply when the "loan from a qualified employer plan no longer satisfies the requirement of section 72(p)(2)(C) * * * [because] the participant fails to make a loan payment either on the date that it is due or within the allowed grace period." Duncan v. Commissioner, T.C. Memo. 2005-171, slip op. at 6; accord sec. 1.72(p)-1, Q&A-4 (explaining further that such a failure would result in a deemed distribution), Q&A-10(a) (providing that plan administrators may allow a cure (grace) period, which cannot continue beyond the last day of the calendar quarter following the calendar quarter in which the required installment payment was due, and that section 72(p)(2)(C) will not be considered to have been violated if the installment payment is made not later than the end of the cure period), Income Tax Regs. Where there is a failure to pay, the amount of the deemed distribution would equal the entire outstanding balance of the loan (including accrued interest) at the time of the failure. Sec. 1.72(p)-1, Q&A-10(b), Income Tax Regs.

**[\*9]** Petitioners failed to make loan payments after May 2012, and they did not repay these missed amounts within the permitted cure period. They therefore do not meet the exception of section 72(p)(2), and the LAUSD QP loan balances are deemed taxable distributions as of November 2012, which is when NAMCO and Midland determined that the loans' grace periods had expired and, accordingly, that petitioner had defaulted. See Ryan v. Commissioner, T.C. Memo. 2011-139, slip op. at 17-18, aff'd, 482 F. App'x 881 (5th Cir. 2012); Owusu v. Commissioner, T.C. Memo. 2010-186, slip op. 9-10.

Petitioners' brief argues that the amounts of the QP deemed distributions cannot be both distributions and existing loan obligations--existing because NAMCO and Midland continued to send quarterly payment notices to petitioners even after the loans were determined defaulted on. It concludes that the statute is clear, that the QP complied with the statute, and, citing Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44 (2011), that the regulation is not entitled to any deference. We disagree.

Petitioners' brief ignores the first five words of the text of section 72(p)(2)(C): "[e]xcept as provided in regulations". These words plainly express Congress' intent to have subparagraph (C) clarified through appropriate regulations, and petitioners offer no alternative explanation for that choice of

[*10] words.  See Mayo Found, 562 U.S. at 45 ("Filling gaps in the Internal Revenue Code plainly requires the Treasury Department to make interpretive choices for statutory implementation[.]").  The regulations under section 72(p) establish the timing and amount of a deemed distribution, and this Court has heeded the final regulations for those determinations.  See, e.g., Ryan v. Commissioner, T.C. Memo. 2011-139; Owusu v. Commissioner, T.C. Memo. 2010-186.

Petitioner had contracted to repay her QP loans under binding agreements--a completely separate (and irrelevant) issue from her having tax due because of deemed distributions from her QP. Cf. Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045, 1049 (9th Cir. 2009) (explaining, within a bankruptcy context, that a retirement plan participant's loan from his retirement account "is essentially a debt to himself--he has borrowed his own money.  [He] contributed the money to the account in the first place; should he fail to repay himself, the administrator has no personal recourse against him.  Instead, the plan will deem the outstanding loan balance to be a distribution of funds, thereby reducing the amount available to * * * [the participant] from his account in the future." (Citations omitted.)).

Petitioners argue that there is no taxable income because the loan proceeds were used for a qualifying purpose.  They assert that section 72(p)(2)(B)(ii)

**[\*11]** "waives the requirement that the loan be repaid with level amortization in five years if the loan is made in connection with acquiring a principal residence." They rely, somewhat ironically, on section 1.72(p)-1, Q&A-8, Income Tax Regs., for the premise that a plan loan does not have to be traced to the purchase of a principal residence so long as it is used to repay a loan that was obtained to purchase a residence. They conclude that there was no requirement for "level payments" and thus no deemed distributions could have occurred in 2012.

Petitioners misinterpret the Code. Section 72(p)(2)(B)(ii), which addresses an exception for home loans, applies only with respect to clause (i) of subparagraph (B), which addresses the requirement that a loan be repayable within five years. Clause (ii) allows for a loan period longer than five years when the loan is used for acquiring a principal residence; however, it has no bearing on the subparagraph (C) requirement of level amortization, which is still mandatory. Moreover, petitioner specifically affirmed in both loan agreements that the loans were not to be used as residential loans; hence they were made under a five-year repayment period.

Ultimately petitioners failed to repay the LAUSD QP loans, and they meet no exceptions under the Code or the related regulations. Therefore, respondent's

**[*12]** determination to treat the loan balances as deemed distributions in 2012 is sustained.

Section 72(t) Additional Tax

Petitioners' brief alleges that respondent's attempt to impose a 10% "penalty", under section 72(q), for premature distributions from annuity contracts is inappropriate because "petitioners did not receive anything in 2012 upon which the penalty could be based." However, the notice of deficiency, upon which this case is based, determined a 10% additional tax under section 72(t)--not section 72(q).

A 10% tax on "early distributions", deemed or actual and occurring before the participant reaches the age 59½, generally applies where a taxpayer receives a QP distribution that is includible in her or his gross income. Sec. 72(t)(1) and (2). Although section 72(t)(2) sets forth certain exceptions to the 10% tax on early distributions, petitioners neither argue that they fit within any of these exceptions nor present evidence to suggest that they might. Therefore, we find that petitioners are liable for the 10% additional tax under section 72(t). See Roundy v. Commissioner, 122 F.3d 835, 837 (9th Cir. 1997), aff'g T.C. Memo. 1995-298.

Although petitioners refer to a "penalty", section 72(t)(1) provides for an "additional tax" and not a penalty. See generally El v. Commissioner, 144 T.C.

**[*13]** 140, 146 (2015) (determining that the Commissioner has no initial burden of production with respect to the additional tax under section 72(t) because it is not a "penalty, addition to tax, or additional amount" under section 7491(c)).

Interest Income

Petitioners stipulated their receipt of $300 of interest income that was not reported on their 2012 return. See sec. 61(a)(4).

Cost of Current Life Insurance Protection

The cost of current life insurance protection provided by an employer is an economic benefit that is included, under section 61(a), in the gross income of the insured employee. See Cadwell v. Commissioner, 136 T.C. 38, 62 (2011), aff'd, 483 F. App'x 847 (4th Cir. 2012). The cost is included in the employee's gross income to allow the death benefit proceeds of the policy to pass to the employee's beneficiaries tax free. See secs. 1.61-22(f)(3)(i), (iii), 1.72-16(c)(4), Income Tax Regs.; see also sec. 101(a). Basically, the cost of current life insurance protection equals the amount of the current life insurance protection provided (typically the difference between the face amount of the policy and its cash surrender value) multiplied by a life insurance premium factor as permitted by IRS guidance. See sec. 1.61-22(d)(3), Income Tax Regs.

[*14] Petitioners argue that Conseco's cost of current life insurance protection computations, on which respondent relied for his determination, were "imprecise". They also argue that "respondent has not adequately established a methodology for the computation of any taxable income amount with respect to the life insurance."

As shown on its worksheets, Conseco calculated the cost by multiplying a premium rate of 1.29--acquired from "GOV TABLE 2001" and based upon petitioner's age of 43 at that time--to the difference between the face amount of the policy (termed "Death Benefit" on the worksheets) and its cash surrender value (termed "SURR VALUE"), then divided by 1,000 (because Table 2001, see infra, is based upon increments of $1,000 of life insurance protection). The de minimis "imprecision" of the calculation's resulting cost of $195.50--when compared to the reported cost of $195.68 on the Form 1099-R issued by Conseco--is explained in the worksheets as having occurred because the cash surrender value was available only up to December 24, 2012, at the time the worksheets were generated, and not up to December 31, 2012, which would have been the ending period used when calculating the amount shown on the 2012 Form 1099-R.

This "methodology" appears to follow the prescribed calculation, and petitioners offer no argument as to why it does not. It appears that Conseco appropriately used the IRS-provided Table 2001 to arrive at the correct premium

[*15] rate, despite the worksheets' references to "PS-58" headings. (Premium factors provided by P.S. 58 rates, found in Rev. Rul. 55-747, 1955-2 C.B. 228, 229, have generally been supplanted by Table 2001, found in Notice 2001-10, 2001-1 C.B. 459, 463, or by an insurer's lower published premium rates that are available to all standard risks for initial issue one-year term insurance. See Notice 2002-8, 2002-1 C.B. 398, 399 (revoking Rev. Rul. 55-747, supra, except where, in certain circumstances, P.S. 58 rates may be used for life insurance arrangements entered into before January 28, 2002); see also sec. 1.61-22(d)(3)(ii), Income Tax Regs.) This Court has found that Table 2001 can be used to provide a reasonable estimate of the cost of one year of life insurance protection. See Cadwell v. Commissioner, 136 T.C. at 64. Accordingly, respondent's determination regarding the inclusion in income of the $195 cost of current life insurance protection for 2012 is sustained.

QTP Distribution

Petitioners' brief alleges that petitioner testified that all her contributions to the QTP were made with post-tax dollars and thus no distributions would be taxable. She did not so testify. Petitioners allege that they spent more than $1,300 in qualifying tuition, as supported by a statement from their daughter's college, which they presented for the first time at trial. The statement was not received

[*16] into evidence because petitioners had failed to comply with the Court's standing pretrial order concerning exchange of documents. Their late production of the statement prejudiced respondent by precluding him from confirming whether the $162 QTP distribution actually was spent on items reflected on the statement.

Generally, a distribution from a QTP is includible in the distributee's gross income in the manner provided under section 72. Sec. 529(c)(3)(A). A taxpayer who receives a QTP distribution is subject to a 10% additional tax where the distributions were not used for educational expenses. Secs. 529(c)(6), 530(d)(4)(A). Because there is no reliable evidence showing that the $162 was used for eligible educational expenses, respondent's determination regarding the $162 QTP distribution is sustained. The additional 10% tax on a QTP distribution is also sustained.

Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on the portion of any underpayment of Federal income tax attributable to a taxpayer's substantial understatement of income tax. A substantial understatement of income tax exists if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Under section 7491(c) the

**[\*17]** Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioners have an understatement of $8,320, which is more than $5,000 (which is greater than 10% of the $15,701 of tax that should have been reported on their 2012 return).  Respondent has therefore met the burden of production as to the penalty, and petitioners must now show that the understatement, or any part thereof, is attributable to an item that was adequately disclosed and has a reasonable basis, or for which there was substantial authority for its tax treatment.  See sec. 6662(d)(2)(B).

Although they were issued Forms 1099-R by NAMCO, Midland, and Conseco, petitioners neither disclosed on their 2012 tax return the taxable amounts reported on the Forms 1099-R nor explained why those amounts were not reported.  See sec. 6662(d)(2)(B)(ii)(I); sec. 1.6662-4(e) and (f), Income Tax Regs.  Petitioners allege that they did not receive any Forms 1099-R and that they had no

[*18] reason to suspect that there was additional income to report for 2012. However, NAMCO, Midland, and Conseco sent their respective Forms 1099-R to petitioners' correct address. It is improbable that they did not receive any of the forms. See Tokarski v. Commissioner, 87 T.C. at 77. They also have not shown that any of the types of authority listed in section 1.6662-4(d)(3)(iii), Income Tax Regs., would support their failure to report the taxable amounts received, as shown on the Forms 1099-R, as income.

With regard to the QTP disbursement, petitioners knew that they withdrew money from a savings account that is not subject to Federal tax only because its funds are to be used for qualified education expenses. When they made the withdrawal in 2012--not shown to be used for educational expenses--they should have expected a tax consequence for that year, regardless of whether they subsequently received a Form 1099-R reporting the distribution. Cf. Brunsman v. Commissioner, T.C. Memo. 2003-291, slip op. at 5 (determining that the taxpayer did not need to receive a Form 1099-MISC to be alerted to the fact that he had received compensation).

Similarly, with respect to the deemed distributions, petitioners knew that they had stopped paying on the QP loans from tax-deferred accounts and, again, should have anticipated tax consequences. They suggest that their having

**[*19]** continued to receive loan repayment notices should somehow excuse their actions--but the lending institutions' further attempts to recover the loan balances had no impact on the taxation of petitioners' deemed distributions in 2012. Ultimately, petitioners have shown no reasonable basis or substantial authority for their failure to report the income from these sources.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment where the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); see Higbee v. Commissioner, 116 T.C. at 448. Relevant factors with respect to whether a taxpayer acted with reasonable cause and in good faith include the taxpayer's knowledge and experience and her or his reliance on the advice of a professional, such as an accountant. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, however, the most important factor is the extent of the taxpayer's effort to determine her or his proper tax liability. Id.; accord Hansen v. Commissioner, 471 F.3d 1021, 1029 (9th Cir. 2006), aff'g T.C. Memo. 2004-269.

Petitioners argue that they suffered multiple calamities in 2012, including the death of petitioner's father, possible foreclosure on their personal residence, and, in 2014, their son's contracting cancer. While their hardships, financial and otherwise, may have understandably overshadowed their tax problems, those

[*20] difficulties do not constitute reasonable cause for an underpayment of Federal income tax within the meaning of section 6664(c). Petitioner is an educated person, yet the facts and circumstances in this case indicate that petitioners did not attempt to assess their proper tax liability for 2012. Petitioners knew that they had received nonwage income, primarily from the out-of-the-ordinary sources of their QP and QTP, and they had a responsibility to determine whether and how those amounts should be reported. They exerted no effort to do so, and, accordingly, the section 6662(a) penalty is sustained.

We have considered the other arguments of the parties. They are moot, immaterial, or otherwise without merit. To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.