T.C. Summary Opinion 2018-59

UNITED STATES TAX COURT

KELLY CHAFIN LIM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26924-17S.                    Filed December 26, 2018.

Kelly Chafin Lim, pro se.

<u>Jay D. Adams</u> and <u>Sarah E. Sexton Martinez</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's Federal income tax of $1,335 for 2015.  After concessions by respondent[2] and without regard to computational adjustments, the sole issue for decision is whether a loan petitioner obtained from a deferred compensation plan, but defaulted on, constitutes a taxable distribution under section 72(p).  The Court holds that it does to the extent stated herein.

---

[1] All subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent concedes that petitioner is not liable for the 10% additional tax under sec. 72(t) on early distributions from qualified retirement plans. Notably, respondent did not determine such additional tax in the notice of deficiency but arguably asserted an increased deficiency based on the additional tax in his pretrial memorandum.  See sec. 6214(a).  In any event, at trial respondent conceded any claim to the additional tax.

Also at trial, see infra p. 6, respondent conceded a modest portion of the distribution that gives rise to the deficiency he determined in the notice of deficiency.

## Background

Some of the facts have been stipulated, and they are so found. The Court incorporates by reference the parties' stipulation of facts and single accompanying exhibit.

Petitioner resided in the State of Illinois at the time that the petition was filed with the Court.

Petitioner worked as an office assistant and human services caseworker for the State of Illinois from May 2006 through June 1, 2017. By virtue of her employment with the State, petitioner participated in a section 457 deferred compensation plan (457 Plan) for which T. Rowe Price Retirement Services, Inc. (T. Rowe Price), served as the custodian.

The 457 Plan permitted participants to apply for loans. In February 2015 petitioner applied for and received a loan. The promissory note determined the amount financed as follows:

| | |
|---|---|
| Amount given to you directly | $8,000 |
| Prepaid finance charge paid to creditor [i.e., plan custodian] | 75 |
| Amount financed | 7,925 |

The accompanying Federal Truth-In-Lending Disclosure Statement specified the following:

| Amount Financed | $7,925.00 |
|---|---|
| Finance Charge | $788.44 |
| Annual Percentage Rate | 4.86% |
| Total of Payments | $8,713.44 |

Payment Schedule: 48 monthly payments of $181.53

Loan documents furnished to petitioner as the borrower at the time of her loan included the following paragraphs:

Borrower understands that the occurrence of any of the following events shall be a default under this Note: (a) failure to pay any principal or interest when due * * * . If Borrower defaults, Borrower understands that failure to cure the default by the time (if any) specified in the plan documents or the plan loan procedures, the total balance of the outstanding loan * * * will be deemed to be a distribution to Borrower, which may be wholly or partially taxable.

* * * * * * *

Borrower understands that there are special problems associated with loan defaults and that potential adverse tax consequences exist as a result of a default * * *. Failure to make payments when due for any reason, or if any default occurs as described herein, * * * then the Loan will be in default * * *. If not repaid, the defaulted loan amount will be reported to Borrower and to the Internal Revenue Service as taxable income.

By letter dated July 27, 2015, T. Rowe Price advised petitioner that she was "behind approximately 4 payments" and that "your loan is delinquent and in danger of being in default." The letter went on to advise petitioner: "Your loan's

date of default, as determined by the Plan sponsor [i.e., the State of Illinois], is September 30, 2015."

Petitioner did not cure the delinquency, and she defaulted on her loan in 2015. During the life of the loan petitioner made a single monthly payment, and the outstanding loan balance at the time of default was $7,846.80.

T. Rowe Price sent petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2015 regarding the defaulted loan. Box 1 ("Gross distribution") and box 2a ("Taxable amount") of the Form 1099-R listed $7,951.28 as both the gross distribution and the taxable amount.

Petitioner timely filed a Federal income tax return for 2015. On her return petitioner reported total income consisting of the following:

| | |
|---|---|
| Wages (line 7) | $51,785 |
| Taxable IRA distributions (line 15b) | 1,704 |
| Taxable pension/annuity amount (line 16b) | [1]185 |
| Total Income (line 22) | $53,674 |

[1] On line 16a ("Gross Pension/Annuity amount") petitioner reported $10,273. The record does not include a meaningful explanation of what either this amount or the amount on line 16b represents, much less the rationale by which petitioner determined those amounts. In any event the record is clear that petitioner only included the amount on line 16b in total income on line 22.

On her return petitioner reported a total tax liability of $3,808, claimed withholding from her wages of $7,174, and received a refund of the difference, i.e., $3,366.

After examining petitioner's 2015 return, respondent determined a deficiency in tax of $1,335. The only substantive adjustment giving rise to the deficiency was an adjustment of $7,951 based on the defaulted loan and the Form 1099-R issued by T. Rowe Price.

In a timely filed petition, petitioner commenced the present case challenging respondent's deficiency determination.

At trial respondent conceded that the $7,951 adjustment was overstated in that it failed to account for the one payment that petitioner did make in respect of her loan. See supra note 2.

Discussion

A. Burden of Proof and Burden of Production

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct and the taxpayer bears the burden of showing that those determinations are erroneous. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, in an unreported income case the Commissioner is obliged to

introduce at least a minimal evidentiary foundation before the presumption of correctness will attach. E.g., Pittman v. Commissioner, 100 F.3d 1308, 1316-1317 (7th Cir. 1996), aff'g T.C. Memo 1995-243; Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); Rivas v. Commissioner, T.C. Memo. 2016-158, at *4. Such an evidentiary foundation exists in the present case, as the record clearly demonstrates that petitioner was employed by the State of Illinois throughout 2015, participated in the 457 Plan, applied for and obtained a loan from that plan, and defaulted on that loan, and that the plan custodian issued a Form 1099-R regarding petitioner's default.

In addition, section 7491(a) may serve to place the burden of proof on the Commissioner if the taxpayer introduces credible evidence and satisfies certain other requirements. Petitioner did not allege that section 7491(a) applies, nor did she introduce credible evidence or otherwise satisfy the requirements of section 7491(a). Accordingly, that section does not apply, and petitioner bears the burden of proof.

Finally, section 6201(d) places the burden of production on the Commissioner "if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the * * * [Commissioner] by a third party and the taxpayer has fully cooperated with the * * *

[Commissioner] (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the * * * [Commissioner])". Petitioner did not allege that section 6201(d) applies. But more importantly, petitioner did not assert a reasonable dispute with respect to the Form 1099-R that T. Rowe Price filed with respondent, nor does the record suggest that she fully cooperated with him, as respondent was obliged to issue a subpoena duces tecum to T. Rowe Price in order to obtain relevant documentation regarding petitioner's account with the 457 Plan and her loan.[3] In sum, respondent does not bear the burden of production, but even if he did, that burden was satisfied by respondent's introduction of evidence in the form of the documents subpoenaed from T. Rowe Price.

B. Deemed Distribution

Gross income includes "all 'accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.'" James v. United States, 366 U.S. 213, 219 (1961) (quoting Commissioner v. Glenshaw Glass Co., 348 U.S. 426,

---

[3] Perhaps emblematic of petitioner's lack of cooperation in this case was her refusal to stipulate to her 2015 income tax return. Also, respondent's concession of the very modest portion of the amount of the defaulted loan occurred only after the Court questioned respondent's counsel about the consequence of petitioner's making one payment in respect of her loan.

431 (1955)); <u>see</u> sec 61(a). Thus, gross income includes, but is not limited to, items such as compensation, annuities, income from life insurance and endowment contracts, and pensions. Sec. 61(a)(1), (9), (10), (11). Further, section 457(a)(1)(A) provides that "[a]ny amount of compensation deferred under an eligible deferred compensation plan, and any income attributable to the amounts so deferred, shall be includible in gross income only for the taxable year in which such income or other income is paid to the participant or other beneficiary".[4]

Insofar as the taxation of a loan from a deferred compensation plan is concerned, section 72(p) provides the applicable rules for decision. Accordingly, we turn our attention to that section.

As a general rule, section 72(p)(1)(A) provides that if a participant or beneficiary receives, directly or indirectly, any amount as a loan from a qualified employer plan, then that amount shall be treated as having been received by such individual as a distribution under that plan. <u>See generally</u> <u>Martinez v. Commissioner</u>, T.C. Memo. 2016-182, at *2-*3; <u>Plotkin v. Commissioner</u>, T.C. Memo. 2001-71, slip op. at 6-7 (and cases cited thereat). For purposes of this rule,

---

[4] An "eligible deferred compensation plan" is defined by sec. 457(b) as a plan established and maintained by an eligible employer having certain specified characteristics. In turn, sec. 457(e)(1)(A) defines "eligible employer" to include a State. There is no issue in the present case that the 457 Plan was an eligible deferred compensation plan within the meaning of sec. 457.

a "qualified employer plan" includes a government plan, sec. 72(p)(4)(A)(ii), and a "government plan" includes any plan, whether or not qualified, established and maintained for its employees by a State, sec. 72(p)(4)(B). Therefore, as a government plan, the 457 Plan constitutes a qualified employer plan.

From the foregoing it follows that the making of a loan from a qualified employer plan gives rise to a deemed distribution that is taxable for the year in which the loan is received. However, section 72(p)(2)(A) provides an exception for certain loans. Thus, as relevant herein given the value of petitioner's account in the 457 Plan, the mere making of a loan (1) that does not exceed the greater of one-half of the nonforfeitable accrued benefit of the employee under the plan or $10,000, (2) that is repayable within five years, and (3) that provides for substantially level amortization (with payments not less frequent than quarterly) does not give rise to a deemed distribution. See sec. 72(p)(2)(A)(ii), (B)(i), (C).

Although a loan may initially satisfy the requirements of section 72(p)(2)(A) at the time that it is made, a deemed distribution may nevertheless occur subsequently because of the failure to repay the loan consistent with the loan agreement, e.g., because of the failure to amortize the loan on a substantially level basis. Sec. 72(p)(2)(C). Accordingly, if a default occurs, a distribution is deemed to occur at that time in the amount of the then-outstanding balance of the loan.

In the present case there is no dispute that petitioner defaulted on the 457 Plan loan in 2015 because of her failure to make the requisite payment within the cure period. The record demonstrates that the balance due at the time of the default was $7,846.80. Thus, pursuant to section 72(p)(1)(A), a distribution is deemed to have been made at such time and in such amount, and, pursuant to section 457(a)(1), the distribution is taxable for 2015.

It is no answer to the foregoing that petitioner did not receive a taxable distribution because she was merely borrowing her own money. Although it is true that loan proceeds do not generally constitute gross income, and even if a loan is made for a worthwhile purpose, any such contention would ignore the fact that petitioner borrowed pretax dollars, i.e., compensation that had not previously been taxed. Accordingly, the defaulted loan from petitioner's 457 Plan account became taxable (pursuant to section 72(p)(1)(A)) in the same manner that a distribution from it would have been taxable if petitioner had simply closed the account and withdrawn the balance therein. In each instance the amount distributed would be taxable (pursuant to section 457(a)(1)) because it represented income that had not previously been taxed.

Finally, the Court has considered petitioner's remaining arguments and find them to be irrelevant or without merit.

To reflect the Court's disposition of the disputed issue, as well as respondent's concession,

Decision will be entered

under Rule 155.
