T.C. Summary Opinion 2019-21

UNITED STATES TAX COURT

GERARD J. MCENROE AND REGINA MCENROE, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7381-18S.                    Filed August 20, 2019.

Gerard J. McEnroe and Regina McEnroe, pro sese.

<u>Monica E. Koch</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $9,638 in petitioners' Federal income tax and an accuracy-related penalty of $1,928 under section 6662(a) for the taxable year 2015 (year in issue). Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioners resided in New York.[2]

After concessions,[3] the issue remaining for decision is whether petitioners are liable for Federal income tax on a deemed distribution of $22,284 from Mr. McEnroe's employer-sponsored retirement account.

---

[1](...continued)
Code (Code), as amended and in effect for 2015, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Mrs. McEnroe did not appear at the trial of this case. Mr. McEnroe appeared and informed the Court that Mrs. McEnroe was aware of the proceeding and had authorized him to prosecute the case on her behalf.

[3]Petitioners concede that they (1) failed to report dividend income of $11 and (2) are subject to the additional tax prescribed in sec. 72(t), but only if the Court decides that Mr. McEnroe received a deemed distribution from his retirement account in 2015. Respondent concedes that petitioners are not liable for an accuracy-related penalty under sec. 6662(a). Other adjustments are computational and will flow from the Court's resolution of the issue remaining in dispute.

## Background[4]

Mr. McEnroe was 51 years old during the year in issue. At that time he had been employed for about 15 years in the Office of the Inspector General for the New York City School Construction Authority (SCA). As an SCA employee Mr. McEnroe participated in the New York City Employees Retirement System (NYCERS), a qualified trust forming part of an employer-sponsored pension plan within the meaning of section 401(a).

In July 2014 Mr. McEnroe borrowed $26,045 from his NYCERS retirement account to help pay college tuition expenses for one of his children. He immediately began to repay the loan through biweekly payroll withholding.

On May 15, 2015, Mr. McEnroe left SCA and accepted a job in the private sector. He quickly grew disillusioned with his new position, however, and returned to SCA in September 2015.

Mr. McEnroe did not make loan payments to NYCERS after he left SCA. When he returned to SCA, Mr. McEnroe learned that NYCERS had determined that his outstanding loan balance would be treated as a distribution, prompting him to contact the SCA human resources office in search of a solution. On

---

[4]The parties stipulated some of the facts.

November 12, 2015, the human resources office sent an email to NYCERS stating

in relevant part:

> Per our conversations, please be advised that Mr. McEnroe wishes his outstanding loan to be reinstated with installment payments effective immediately.
>
> Mr. McEnroe had left the SCA for a brief period of time and as such payments were not being withheld. A notice of distribution was subsequently sent to his home. As Mr. McEnroe is now once again an active SCA employee he would like for his loan not to be treated as a distribution and to repay in bi-weekly payroll deductions.
>
> Thank you for your assistance in this matter.
>
> Please advise when we can expect payments to begin and confirm this loan will not be treated as a distribution.

NYCERS responded to SCA by email as follows: "I did receive you [sic] e-mail

and we will process a revision and it will be done for 11/20/15."

In early December 2015 Mr. McEnroe resumed making loan payments to

NYCERS through biweekly payroll withholding.

NYCERS issued Form 1099-R, Distributions From Pensions, Annuities,

Retirement or Profit Sharing Plans, IRAs, Insurance Contracts, etc., reporting that

Mr. McEnroe had received a distribution of $22,284 from his retirement account

in 2015.[5]  The $22,284 amount represents the outstanding balance on Mr. McEnroe's loan from his NYCERS retirement account as of June 24, 2015.

Petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for 2015 but did not report any income attributable to pension or annuity payments. As indicated above, respondent determined that petitioners received a deemed distribution of $22,284 from Mr. McEnroe's NYCERS retirement account during the year in issue and that the distribution is subject to both income tax and the additional tax prescribed in section 72(t).  Petitioners contend that Mr. McEnroe should not be considered to have received a taxable distribution from his retirement account because he successfully "reinstated" the loan and resumed loan payments in December 2015.

## Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Because the facts relevant to the Court's disposition of this case are not in dispute, the assignment of the burden of proof is immaterial.

---

[5]Petitioners were unaware that the Form 1099-R had been issued until May 2017.

Unreported Income

Section 61(a) provides that "gross income means all income from whatever source derived". Gross income includes, but is not limited to, items such as compensation, annuities, income from life insurance and endowment contracts, and pensions. Sec. 61(a)(1), (9), (10), (11).

Section 402(a) provides the general rule that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72 (relating to annuities)." Because Mr. McEnroe's NYCERS retirement plan was a qualified plan under section 401(a), any amount actually distributed to him normally would be subject to Federal income tax pursuant to section 72. See sec. 402(a).

Section 72(p)(1)(A) provides the general rule that if a participant receives either directly or indirectly "any amount as a loan from a qualified employer plan, such amount shall be treated as having been received by such individual as a distribution under such plan." Section 72(p)(2) provides an exception to the general rule, however, where the loan (when added to the outstanding balance of all other loans from the same plan) does not exceed a specified limit, see sec.

72(p)(2)(A); where the loan, by its terms, must be repaid within 5 years from the date of its inception or used to finance the acquisition of a home that is the principal residence of the participant, see sec. 72(p)(2)(B); and where the loan is subject to substantially level amortization with quarterly or more frequent payments required over the term of the loan, see sec. 72(p)(2)(C).

If a plan participant fails to make a loan payment either on the date it is due or within an allowed grace period, a loan from a qualified plan no longer satisfies the requirements of section 72(p)(2)(C). See Martinez v. Commissioner, T.C. Memo. 2016-182, at *8. In this regard section 1.72(p)-1, Q&A-10(a), Income Tax Regs., provides that, in the event of an overdue payment, plan administrators may allow a cure (grace) period, which cannot continue beyond the last day of the calendar quarter following the calendar quarter in which the required installment payment was due, and that section 72(p)(2)(C) will not be considered to have been violated if the installment payment is made not later than the end of the cure period.

Mr. McEnroe failed to make loan payments that were due over a roughly six-month period stretching from June to December 2015. Because he first defaulted in respect of a loan payment that was due in June 2015, which falls in the second calendar quarter, a grace period, if any, would have been required to

expire no later than September 30, 2015, the last day of the third calendar quarter. See sec. 1.72(p)-1, Q&A-10(a), Income Tax Regs.  Mr. McEnroe did not resume making loan payments, however, until December 2015.  Moreover, when he did resume making loan payments, he did not cure the earlier default; i.e., he did not make a lump-sum payment to cover the many payments (with accrued interest) that he had failed to remit earlier in the year.

Under the circumstances, NYCERS properly concluded that Mr. McEnroe had defaulted on the loan during the year in issue and correctly reported his entire loan balance at the time of the default ($22,284) as a deemed distribution.  It follows that respondent's determination that petitioners are liable for Federal income tax and additional tax under section 72(t) in respect of the deemed distribution is sustained.

Additional Argument

Petitioners maintain that, considering all the facts and circumstances, it would be inequitable to impose income tax and additional tax under section 72(t) on a deemed distribution from Mr. McEnroe's retirement account for the year in issue.  In particular, they assert that NYCERS did not provide Mr. McEnroe with timely notice that his loan was considered to be in default and, in any event, he

acted reasonably and in good faith when he resumed making loan payments in December 2015.

We have considered similar claims in the past and have observed that there is no authority in the Code or caselaw for an equitable or hardship exception to the imposition of income tax and additional tax under section 72(t) on early distributions from a retirement account.  See Arnold v. Commissioner, 111 T.C. 250, 255 (1998); Adams v. Commissioner, T.C. Memo. 2015-162, at *8; Dollander v. Commissioner, T.C. Memo. 2009-187.  The Court may not add an exception to the Code by judicial fiat, and we are obliged to apply the law as written.  See Iselin v. United States, 270 U.S. 245, 250-251 (1926).

To reflect the foregoing,

An appropriate decision will be entered.